ERVIN, Judge.
Claimant, Alejandro Moya, appeals an order denying his claim for temporary partial disability (TPD) or wage loss (WL) benefits from November 14,1990 to October 15,1991, and in so doing challenges the finding of the judge of compensation claims (JCC) that Moya conducted an inadequate job search and voluntarily limited his income. We affirm in part, reverse in part and remand for further findings consistent with this opinion.
Moya was injured on June 28, 1989, while working as a forklift operator for the employer, Palm Beach County School Board. According to his treating orthopedist, Dr. Eric Fishman, Moya reached maximum medical improvement on June 11, 1990, with a three percent permanent impairment. On September 6, 1990, Dr. Fishman recommended that Moya return to work full duty for 20 hours per week, stating that he would reevaluate his patient after two weeks or at such other time if it developed that Moya was unable to work the suggested 20 hours. Dr. Fishman executed two forms in which he stated that Moya could work without restrictions. Moya did not return to Dr. Fishman.
After receiving Dr. Fishman’s final report, the School Board offered Moya his former position as a forklift operator. The job required lifting heavy items throughout the day, and both Moya and his chiropractor did not believe he could perform such lifting. When Moya did not report to work, he was taken off the payroll and his compensation benefits were terminated. He sought a resumption of benefits from November 14,1990 through October 15,1991, and submitted job-search forms covering most of that period. The JCC denied Moya’s claim, ruling that he had performed an inadequate job search, and, by refusing his former job, he had voluntarily limited his income.
In so deciding, the JCC advanced the following three reasons: (1) claimant rarely looked for jobs where positions were available; (2) on the job-search forms, Moya identified the individual he contacted as “PERSONNEL,” rather than specific persons; and (3) he did not look for work every day. The facts of record do not support the first reason, and the law does not support the second and third. As to reason (1), of the more than 250 job contacts represented in the job-search forms, Moya filed applications with approximately 174 prospective employers, 92 of whom informed him that the position which he sought was no longer available. The record does not therefore support the JCC’s conclusion that claimant “rarely” looked for available jobs.
As to reason (2), although Moya may have been remiss in listing nearly all the employer contacts as “personnel,” we cannot conclude that his failure to provide more specific identification compromises the sincerity or scope of his job search. Indeed, if the employer/carrier considered this a sign of inadequacy, it should have informed claimant of such at the beginning of his work search. See Roll v. Sebastian Inlet, SRA, 609 So.2d 674, 677 (Fla. 1st DCA 1992) (employer has duty to monitor claimant’s job search to ensure its effectiveness).
Finally, as to reason (3), Moya sought employment with 13 or 14 employers every two weeks. Section 440.15(3)(b)(3), Florida Statutes (1989), does not require that a claimant look for work every work day during the requisite two-week period. Nothing on the job-search forms or “loss of wages/benefit verification” forms indicates in any way that Moya was required to look for work daily. Because the record lacks support for the JCC’s conclusion that Moya’s job search was inadequate, we reverse as to this *1309 point. DeGroot v. Sheffield, 95 So.2d 912, 916 (Fla.1957) (en banc).
Once a claimant has demonstrated an adequate, good-faith work search, the burden is placed on the employer to show that the claimant refused to work or voluntarily limited his or her income. Meek v. LayneWestern Co., 566 So.2d 31, 33 (Fla. 1st DCA 1990). We agree that the evidence supports the JCC’s finding that claimant voluntarily limited his income by refusing to attempt to return to his former position as a forklift operator. Although claimant’s chiropractor, Dr. Woods, disagreed with Dr. Fishman’s release of claimant to return to work without restrictions, the JCC was entitled to rely on the latter’s opinion.
Nevertheless, WL benefits must be claimed separately each month, and the JCC is authorized to deny a claim based on an employee’s voluntary limitation of income and apply the deemed-earnings provision of Section 440.15(3)(b)(2), Florida Statutes (1991), only “during the time period in question.” Bright v. City of Tampa, 546 So.2d 1122, 1124 (Fla. 1st DCA 1989) (emphasis omitted) (claimant voluntarily limited his income only during the month of July 1987, when he quit his job with the city to work for the state; thereafter, employer/earrier failed to demonstrate that suitable employment commensurate with his abilities was available or that claimant refused suitable employment); Bado v. Canteen Corp., 513 So.2d 1364 (Fla. 1st DCA 1987) (although WL benefits may be decreased during the period in which the claimant voluntarily limits his or her income, the deemed-earnings provision cannot be applied during the months that an adequate job search was performed). In the case at bar, the forklift operator position was subsequently frozen because of budget cutbacks. Therefore, the JCC could properly deny benefits only for the period from November 6 through November 19,1990, as the job was surely open during that period. Absent any evidence regarding how long afterward the position remained open, the JCC erred by declining to award WL benefits from November 19, 1990.[1]
Claimant did not, however, submit job-search forms for the periods from November 20 through December 3, 1990, June 4 through July 1, 1991, or after September 23, 1991. Consequently, benefits should be excluded for these time spans.[2]
To summarize, we affirm that portion of the JCC’s order concluding that Moya voluntarily limited his income for the period between November 6 and November 19, 1990, but we reverse his findings in that regard as to all times after November 19, 1990, with the exception of those periods previously noted during which claimant failed to submit work-search forms. We further reverse the JCC’s determination that claimant conducted an inadequate job search.
AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further consistent proceedings.
JOANOS, J., concurs.
KAHN, J., concurs with written opinion.

. We do not consider the fact that Moya declined to apply for a position with the School Board in March 1990, as material to the issues on appeal, because the claimant is seeking benefits for a period long thereafter, beginning November 19, 1990.

. The employer/earrier asserts that there are several other terms during which Moya did not submit job-search forms. On the contrary, there are forms for those periods, although they reflect that Moya looked for work during only one of the two weeks. As stated, there is no requirement in the statute or on the form that a claimant seek work every day of the requisite two-week term.