DAVIS, Judge.
Richard Woodbury appeals an order of the Judge of Compensation Claims (JCC) denying his claim for temporary total, temporary partial, or wage loss benefits from January 1, 1993, to the present. The JCC denied benefits after finding that the claimant had suffered no permanent partial impairment as a result of his March 25, 1992, compensable accident; that the 1990 amendments to section 440.15, Florida Statutes, precluded an award of permanent partial impairment benefits to this claimant when physical restrictions had been placed upon him after his treating physician determined he had reached maximum medical improvement (MMI) with a zero percent permanent impairment rating; and that no benefits were due to the claimant because the employer, Southland Corporation, had offered, and Mr. Woodbury refused to accept, a job meeting his physical requirements. We affirm the denial of benefits based upon the alternative holding that the claimant had no permanent impairment.
Richard Woodbury, the claimant, was employed by Southland Corporation as a clerk[1] in a 7-11 convenience store, when he slipped and fell and was injured on March 25, 1992. There is no dispute over the fact that this was a compensable accident. E/C paid benefits through December 31,1992, although the employer first offered a job to the claimant in November 1992.[2] Claimant’s treating physician, Dr. Goldberger, found that Mr. Woodbury had reached MMI as of November 18, 1992. Dr. Goldberger gave claimant a zero percent permanent impairment rating and released him to work with certain lifting restrictions based upon the functional capacity evaluation performed by physical therapist Rolando DeGuzman.[3]
The JCC found that the claimant actually had no permanent impairment. This finding of fact is supported by competent substantial evidence in the record. The JCC expressly relied upon the opinions of Dr. Vega, who examined the claimant four times and concluded that there was no permanent impairment and that no restrictions on Mr. *469 Woodbury’s ability to return to work were justified or required. Although Mr. DeGuz-man, a physical therapist, and Dr. Goldber-ger, the claimant’s treating physician, imposed certain lifting restrictions, Dr. Gold-berger also found a zero percent permanent impairment. Furthermore, Dr. Goldberger made no objective findings to justify the lifting restrictions. His office notes indicated that the claimant was unwilling to return to work, that the MRI revealed no impairment, that the claimant had a zero percent impairment rating, but that the return to work should be under the restrictions imposed in the functional capacity evaluation performed by Mr. DeGuzman in order to give claimant “the benefit of the doubt.”
To the extent that Dr. Goldberger’s equivocal testimony finds both a zero percent impairment and imposes restrictions, it is irreconcilable. In Alberta v. American Freight Systems, 565 So.2d • 378 (Fla. 1st DCA 1990), this court held that an expert medical opinion that a claimant had reached MMI with no permanent impairment but in need of work restrictions was inconsistent and did not constitute competent substantial evidence. The result in that case was reversal of the finding that no permanent impairment existed, and a remand for the taking of further evidence. However, the reason for that result was the fact that the medical notes, which were not explained by the doctor, contained test results under which the claimant would have been entitled to a permanent impairment rating under the AMA Guides. Id. at 379.
In the present case there are no test results which support a finding of permanent impairment. Both Dr. Goldberger and Dr. Vega clearly stated that there were no such objective findings. In Rodriguez v. Albertson’s, 614 So.2d 678 (Fla. 1st DCA 1993), this court stated expressly that a zero percent permanent impairment rating is irreconcilable with the imposition of work restrictions after MMI, and therefore the testimony of the medical expert who offered those conflicting opinions was not competent substantial evidence. The court therefore rejected that opinion and relied upon the only other opinion in the record, holding that the second opinion was unrebutted. The second opinion was that the claimant had both work restrictions and a permanent impairment. Under the reasoning of Rodriguez, the JCC in the present case was correct in rejecting the inconsistent opinions of Dr. Goldberger and accepting the opinion of Dr. Vega that claimant had neither permanent impairment nor work restrictions.[4]
The JCC’s order in this case contains valid grounds for denying benefits, supported by competent substantial evidence. Accordingly, the order below is AFFIRMED.
ALLEN, J., and WENTWORTH, Senior Judge, concur.

. There is also some evidence indicating that his job title was assistant manager.

. There is competent substantial evidence to support the finding of the JCC that Southland offered Mr. Woodbury a job within his alleged restrictions. If he had a permanent impairment this voluntary limitation of income would justify the application of the deemed earnings provision. See Moya v. Palm Beach County School Board, 627 So.2d 1307, 1309 (Fla. 1st DCA 1993).

.The results indicated claimant could perform medium work with certain lifting restrictions. Joy Townsend, Human Resources Manager for the State of Florida for Southland, testified that claimant had been offered a job within those restrictions. She testified that the position offered to Mr. Woodbury was within those restrictions because he was to be teamed with another assistant manager who would do any lifting beyond claimant's capacity.

. In view of this resolution of the case, we need not address the argument that the JCC erred in ruling that the 1990 amendments altered the substantive law defining permanent impairment and applying that law to this case.