694 So.2d 40 (1997)
John KORODY, Appellant,
v.
QUALITY STEEL AND CLAIMS CENTER, Appellee.
No. 96-1604.
District Court of Appeal of Florida, First District.
January 22, 1997.
William H. McKnight, Tampa, for Appellant.
Robert A. Arthur of Matusek, McKnight, Poluse & Cangro, P.A., St. Petersburg, for Appellee.
DAVIS, Judge.
Claimant, John Korody, suffered a compensable injury in the course and scope of his employment in November 1993. In addition to the physical impairment of a hernia, he has developed a psychiatric condition causally related to his compensable injury. Mr. Korody achieved maximum medical improvement (MMI) from his physical injuries on April 24, 1995. He has not yet achieved MMI from the psychiatric injury, but has had no work restrictions imposed upon him as a result of the psychiatric condition. Mr. Korody appeals the final order rendered by the Judge of Compensation Claims on March 22, 1996, asserting three errors: (1) that it was improper to award wage loss benefits beginning July 1, 1995, rather than temporary partial disability (TPD) benefits, because the claimant was not yet at overall *41 MMI; (2) the JCC erred by ruling that the claimant performed an inadequate work search from August 4, 1994, through July 1, 1995, and that he was therefore not entitled to TPD benefits for that period; and (3) that the burden shifted to the employer/servicing agent (e/sa) to establish entitlement to deemed earnings in the period from August 4, 1994 through July 1, 1995, and the e/sa failed to carry that burden. The e/sa crossappeal the inclusion of the words "and continuing" in the award of wage loss benefits beginning July 1, 1995; the award of penalties; and the JCC's failure to apply the offset provisions in section 440.15(1), Florida Statutes (1991), for the period of time the claimant was receiving unemployment compensation benefits. Claimant concedes error on all three issues on cross-appeal, and we conclude without further discussion that these are errors which must be corrected on remand. We find no merit to claimant's "deemed earnings" argument, though the JCC may revisit this issue if she changes her opinion upon remand regarding the adequacy of the claimant's job search. See Publix Supermarket, Inc. v. Hart, 609 So.2d 1342, 1344 (Fla. 1st DCA 1992). We reverse on the remaining issues and remand for further proceedings.
The claimant was employed as a steelworker when he sustained a hernia in the course and scope of his employment in November 1993. Though the hernia was surgically repaired, claimant continued to suffer ileal/inguinal pain. He reached physical maximum medical improvement on April 24, 1995, with a 5% impairment rating and restrictions against frequent lifting from the floor. After assessing the conflicting psychiatric evidence, the JCC concluded that claimant has a psychiatric condition related to his compensable injury and is entitled to treatment for that condition. However, the JCC found that there were no restrictions placed on the claimant's ability to work based upon his depression from chronic pain.
Claimant was paid indemnity benefits through August 4, 1994. He filed a claim seeking temporary total disability benefits (TTD), temporary partial disability benefits (TPD) or wage loss benefits from August 4, 1994, to present and continuing. The JCC ruled that claimant was not totally disabled in the relevant time period, and was therefore not eligible for TTD benefits. The JCC held that claimant was eligible for TPD benefits through April 23, 1995, implicitly concluding that the class of benefits the claimant would receive from April 24, 1995, forward, if entitled, was permanent impairment wage loss benefits. However, the JCC denied all requested indemnity benefits in the time period from August 4, 1994, through June 30, 1995, finding that the claimant already received TTD benefits in the period from 11/10/94 through 11/28/94; was not entitled to benefits for the period from 2/6/95 through 2/19/95 because the loss of wages in that time span was attributable to an unrelated automobile accident; failed to submit timely wage loss forms for the periods from 3/6/95 through 4/2/95, and 6/5/95 through 6/18/95; and that for the remaining time the claimant was not entitled to benefits because he failed to make a good faith job search.[1] At oral argument, counsel for the e/sa correctly conceded that indemnity benefits would be due for the period from June 19, 1995, through July 2, 1995, without regard to the adequacy of the claimant's job search, if he was in fact employed full time during that period. The record contains evidence that the claimant was employed full time for the week from June 26, 1995, through July 2, 1995. On remand, the JCC should reconsider the question whether the claimant was entitled to benefits for the period encompassing June 26, 1995, through July 2, 1995, without regard to the adequacy of his job search.
The JCC awarded "wage loss benefits from 7/1/95 and continuing." The JCC erred in awarding wage loss benefits before the claimant achieved overall MMI, notwithstanding the lack of restrictions imposed as a result of claimant's psychiatric condition. "[W]here a claimant has both orthopedic and psychiatric injuries, permanent disability benefits cannot be awarded prior to the claimant's reaching MMI from both disorders." Entenmann's Bakery v. Smith, 620 *42 So.2d 1049, 1051 (Fla. 1st DCA 1993)(emphasis in original). The fact that the claimant's work restrictions all stem from his physical injuries rather than his psychiatric condition is not relevant to this issue. In Mora v. Max Bauer Meat Packing, Inc., 378 So.2d 119 (Fla. 1st DCA 1980), the evidence showed that the claimant's psychiatric condition "was not such as to affect his regular employment..." Id. at 120. Nonetheless, the court held that it was a "patent error" to award permanent disability benefits during the interim between the earlier orthopedic MMI date and the subsequent psychiatric MMI.
The claimant also argues that the JCC erred as a matter of law in finding his work search inadequate because he made six job contacts in each relevant period. There is no "absolute number of minimum or average monthly contacts as a threshold requirement for an adequate work search. The decisions of this court have cautioned against such a mechanical approach, emphasizing instead that the adequacy of a work search is a factual issue which is dependent upon the totality of the circumstances, including quality and context as well as number of job contacts, in each case." GCC Beverages v. Simmons, 571 So.2d 59, 60 (Fla. 1st DCA 1990).
This record contains competent substantial evidence upon which the JCC could justifiably conclude that claimant's work search was inadequate. The JCC, as the trier of fact, is responsible for making credibility determinations, and expressly found the testimony of the claimant unpersuasive. The JCC, however, rejected claimant's twenty-five job search forms as evidence of a good faith job search because he wrote "work w/in phys. limitations" on the forms rather than identifying actual positions for which he made application. In making her decision, the JCC appears to have believed that she was constrained to reject the forms as evidence of a good faith job search based upon the manner in which the claimant completed the forms. As a matter of law, the JCC was not obligated to discount these forms as evidence. This case is similar to Moya v. Palm Beach County School Board, 627 So.2d 1307 (Fla. 1st DCA 1993), in which the JCC concluded that the claimant's work search was inadequate in part because the employee identified the person contacted as "personnel" rather than putting the actual name. The court stated that "we cannot conclude that his failure to provide more specific identification compromises the sincerity or scope of his job search. Indeed, if the employer/carrier considered this a sign of inadequacy, it should have informed claimant of such at the beginning of his work search." In the present case the e/sa never informed the claimant that there was any problem with the manner in which he completed his job search forms. On remand the JCC should reconsider this determination in light of the Moya decision.
Accordingly, we reverse the award of wage loss benefits from July 1, 1995, "and continuing" because the claimant has not yet reached overall MMI and because claimant has conceded that the words "and continuing" should be excised; we reverse the denial of benefits in the bi-weekly period from June 19, 1995, through July 2, 1995, for reconsideration of whether the claimant was employed full time, entitling him to benefits without regard to the adequacy of his job search; we reverse and remand for reconsideration of the adequacy of the work search in light of Moya; we reverse the award of penalties; and we reverse the failure to apply the unemployment compensation offset.
ERVIN and KAHN, JJ., concur.
NOTES
[1] Only the ruling on the adequacy of the job search is at issue in this appeal. For the time periods in which the JCC ruled that the claimant failed to submit timely forms or was not entitled to benefits on other grounds, the JCC's rulings stand uncontested.